BUCK v. TIMOMY.

(Circuit Court, S. D. New York. February 6, 1897.)

1. PATENTS—AGREEMENT TO ASSIGN.

An agreement to assign future patents, in consideration of the assignee's paying the expenses of taking them out, is broken by his refusal to pay for and take out in his own name, as assignee, a particular patent, when so requested by the inventor; and a subsequent assignment to another conveys a perfect title.

2. SAME—VALIDITY AND CONSTRUCTION—BRICK-MOLD SANDING MACHINES.

The Buck patent, No. 499,206, for improvements in brick-mold sanding machines, was not anticipated by a prior patent to the same inventor, and is for a new, valuable, and patentable combination, whereby, by means of a yielding mold-feeding rack, the molds are fed automatically to the revolving drum.

3. SAME—INVENTION.

There is no invention in providing an iron plate with elongated bolt holes where the parts must be moved slightly to effect a proper adjustment.

This was a suit in equity by Frances C. Buck against Frank Timomy for alleged infringement of a patent for an improvement in brick-mold sanding machines.

George A. Mosher, for complainant.
Walter E. Ward, for defendant.

COXE, District Judge. This is an equity suit for the infringement of letters patent, No. 499,206, granted June 13, 1893, to James A. Buck, assignor to the complainant, for improvements in brick-mold sanding machines. The object of these machines is to sand the molds prior to their introduction into the brick machine, so as to prevent the adherence of clay to the molds. This is accomplished by a hollow drum having openings over which the molds are placed. When the drum is rotated, the sand which it contains falls into the molds as they descend and out of them as they rise again, thus sanding every part. Machines of this general character had previously been used, and several patents therefor had been granted to this inventor. The improvement of the present patent has relation to the mechanism by which the molds are fed automatically to the drum. At first this work was done by hand. Afterwards it was done, imperfectly, by machinery. It was never done in a satisfactory manner prior to the present invention. In practice, the molds, after being used for a time, became sticky from the adhesion of the plastic clay. This often prevented them from moving into place. In the old machines they would adhere to the rack, become wedged between the stop on the drum and the pulleys, and thus would clog and break the machine and seriously delay the

operation of brickmaking. The invention obviates all these difficulties by providing a safe and reliable feed. The new and really valuable features of the patent are the yielding mold-feeding rack, pivoted at its lower end upon a fixed support, and bearings for the pulley shaft secured to and movable with the feed rack. By this means the shaft carrying the pulleys recedes with the rack, and the pulleys are enabled to continue their feeding action in circumstances which would block the prior machines.

The patent contains two claims, both of which are involved. They are as follows:

"(1) In a brick-mold sanding machine, the combination with a rotary mold-carrying cylinder; mold-engaging stops secured to such cylinder; of a yielding mold-feeding rack pivoted at its lower end upon a fixed support; a mold-supporting belt; a belt-supporting pulley and shaft; and bearings for the shaft secured to and movable with such rack, substantially as described.

"(2) In a brick-mold sanding machine, the combination with a rotary mold-carrying cylinder of an adjustable mold-engaging stop, substantially as described."

The defenses are defect of title, anticipation, lack of novelty and noninfringement.

The complainant has a valid title. It is assailed for the reason that by a contract made March 6, 1889, the inventor agreed to assign to A. H. Newton & Bros. all patents (or a joint interest therein) thereafter to be secured by him. It is said that the title is in the Newtons and not in the complainant. The court cannot accept this view. As a consideration for the proposed assignment the Newtons promised to pay all expenses of obtaining future patents. Before the assignment to the complainant, Buck demanded of A. H. Newton that he pay the expenses of taking out the patent, and requested him to take it out in his (Newton's) name as assignee. Newton refused to pay the expenses and declined to have anything to do with the patent. Buck then assigned the patent to the complainant and it was issued as before stated. Newton's action in refusing to perform his part of the agreement was, of course, the end of any pretense of ownership. Kittle v. Frost, 9 Blatchf. 214, 225, 14 Fed. Cas. 694. It seems too plain for discussion that when a party has agreed to pay a certain price for a patent, if he does not pay the price he does not get the patent. When Buck offered to assign to Newton upon the agreed terms and Newton positively declined to pay, the transaction ended. Buck did not for this reason lose his right to the invention. After he offered the patent to Newton and Newton refused to receive it, he had a right to take it in his own name or assign it as his option; his duty towards Newton was discharged. He was not under the slightest obligation to renew the offer which had thus been almost contemptuously declined.

The first claim contains six elements but those which make the combination new and valuable are the yielding mold-feeding rack pivoted at its lower end upon a fixed support, and the belt-supporting pulley and shaft and bearings for the shaft secured to and movable with such rack. These features were entirely new with Buck; no prior structure shows a yielding rack and feeding pulley. The advantages of this construction are obvious, and are illustrated by the

fact that after the machine of the patent came into use it supplanted the old methods and occupies the market, substantially, alone. The general appearance and operation of the new and old machines are so similar that unless care is taken the clearly meritorious features of the present invention may be lost sight of. There can be no doubt that this addition to the art was a valuable one. So far as feeding the molds to the drum is concerned, the machine is entirely automatic and is a perfectly working device. Prior to 1882 brick molds were sanded by hand. Buck was the first to make a machine for doing this work. He is the father of this art. The record shows five patents granted to him for the machines and improvements thereon.

The principal attack upon the patent at bar is based upon Buck's prior patent of July 1, 1884, which, it is argued, is a complete anticipation. So far as this complainant is concerned, the defendant is at liberty to use the 1884 patent. It was to remedy the defects of that patent that the present invention was made. In the prior machine there was, practically, no movement of the rack and pulleys to and from the drum. The pulley shaft was mounted upon standards bolted to the main frame. The standards could not move a hair's breadth. The shaft could move a small fraction of an inch by reason of the fact that the holes in the standards were made slightly larger than the diameter of the shaft, but this only took place when the set screws were not used which were designed to hold the shaft tightly in the bearings. For all practical purposes the shaft was immovable. The feed rack was fulcrumed upon the same shaft. It is true that the slight vibration of the rack in the prior machine was sufficient for ordinary emergencies, but when a mold caught, something had to give way. The rack would yield to the limited extent referred to, and when that point was reached it was rigid as if bolted to the frame. All of the difficulties incident to this construction were obviated by the ingenious expedient of making the rack and the entire feeding apparatus movable back and forth in such manner that they will operate to feed the molds as perfectly "when the stops force a mold against the wheel" as when the molds drop into place in the normal manner. To do this required invention. The defendant's machine is clearly an infringement of this claim. The only difference pointed out is that in the patented machine the spring is extended and in defendant's machine it is compressed. This difference is wholly immaterial. The complainant is not restricted to any particular form of spring.

For the reasons stated at the argument a decree upon the second claim cannot be sustained. In order to find infringement the court must hold that it involves invention to provide an iron plate with elongated bolt holes. It is one of the obvious expedients of the mechanic to place such holes in parts which must be moved slightly in order to adjust them properly. It is not possible to uphold the claim if construed to cover the defendant's construction.

It follows that the complainant is entitled to a decree for an injunction and an accounting based upon the first claim of the patent.